UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62143-CIV-COHN/SELTZER

JANOS MAGASREVY,

     Plaintiff,

v.

RETIREMENT COMMITTEE, PLAN
ADMINISTRATOR OF EXECUTIVE
RETIREMENT PLAN OF THERMAL
CERAMICS LATIN AMERICA;
RETIREMENT COMMITTEE, PLAN
ADMINISTRATOR OF MORGAN US
EMPLOYEES' RETIREMENT PLAN;
and THERMAL CERAMICS, INC.;

     Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss the

Complaint [DE 8] (the "Motion").  The Court has carefully reviewed the Motion, as well

as Plaintiff's Response [DE 19] and Defendants' Reply [DE 34], and is otherwise fully

advised in the premises.

**I.    Background**

    **A.    Facts[1]**

From February 1987 to December 2012, Plaintiff Janos Magasrevy worked in

management positions—first in Venezuela and later in South Florida—for Defendant

Thermal Ceramics, Inc., ("TCI") and its related companies.  While employed by TCI,

---

[1]  The facts recited in this section, taken from Plaintiff's Complaint [DE 1], are
accepted as true for purposes of the Motion.  See Bell Atl. Corp. v. Twombly, 550 U.S.
544, 555-56 (2007).

Plaintiff participated in the Executive Retirement Plan of Thermal Ceramics Latin America (the "Executive Plan") and the Morgan US Employees' Retirement Plan (the "MUSE Plan") (together, the "Plans").  Plaintiff asserts, and Defendants do not dispute, that the Plans are "employee pension benefit plans" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA").  See 29 U.S.C. § 1002(2)(A).

In September 1999, Plaintiff was selected to participate in the Executive Plan, which TCI described as a retirement plan for a "select group of executives who the company considers as having a key role in directing the business and achieving strategic business goals."  DE 8-1 at 19 (letter from TCI to Plaintiff).[2]  The terms of the Executive Plan required TCI to establish and fund a trust to pay the promised benefits.  But Plaintiff alleges that TCI "never established the trust, or otherwise set aside monies to fund the benefits."  DE 1 at 5, ¶ 15 (Compl.).  More, Plaintiff claims that TCI's senior management repeatedly expressed concerns about having to pay benefits under the Executive Plan because no money had been set aside to make those payments.

The Executive Plan covered Plaintiff and three other executives.  By 2011, TCI had terminated the other executives; as a result, they were entitled to no benefits under the Executive Plan.  Also in 2011, Plaintiff's supervisor "asked him to provide a detailed analysis of the value of his early and normal retirement benefits under the [Executive] Plan, and to provide an explanation of his understanding regarding the Company's obligation with regard to such benefits."  DE 1 at 6, ¶ 20.  Though Plaintiff had received strong performance reviews, TCI terminated him without cause in December 2012.

_____

[2]  Defendants have attached to their Motion documents regarding the Plans. See DE 8-1–8-3.  The Court may consider these documents in ruling on the Motion because they are central to Plaintiff's claims and their authenticity is undisputed. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

Plaintiff was then 58 years old and, he claims, just 21 months away from being eligible for early-retirement benefits under the Executive Plan.  In addition, although TCI had employed Plaintiff for 25 years, the company informed him that, under the MUSE Plan, he was only entitled to service credit from 2005 until the date of his termination.  This limitation reduced Plaintiff's monthly pension benefit to less than $150.00.

B.      **Procedural History**

On October 12, 2015, Plaintiff filed this action against TCI and the administrators of the Plans (together, "Defendants").  Plaintiff first claims that Defendants violated § 510 of ERISA, 29 U.S.C. § 1140, by terminating his employment "for the sole purpose, and with the specific intent, of preventing him from obtaining an early or normal retirement benefit under the Executive Plan."  DE 1 at 8, ¶ 31.  Second, Plaintiff seeks a clarification of rights, see 29 U.S.C. § 1132(a)(1)(B), regarding whether the Executive Plan is a so-called "Top Hat Plan" exempt from many of ERISA's substantive requirements (Plaintiff contends it is not).  See id. §§ 1051(a)(2), 1081(a)(3), 1101(a)(1).  Plaintiff's third claim seeks recovery of certain retirement benefits, which vary depending on whether the Court finds the Executive Plan to be a Top Hat Plan. See id. § 1132(a)(1)(B).  Fourth, Plaintiff asserts a claim for unpaid benefits under the MUSE Plan, asserting that he should receive service credit for the full length of his employment with TCI.  See id.  Fifth and last, Plaintiff claims he is entitled to recover reasonable attorney's fees for his prosecution of this action.  See id. § 1132(g).

Defendants now move to dismiss all of Plaintiff's claims.  See DE 8.  In general, Defendants argue that (1) the Court lacks subject-matter jurisdiction over Plaintiff's first two claims because they were resolved in a prior settlement agreement with TCI, and (2) Plaintiff's Complaint states no valid claim for relief.  See Fed. R. Civ. P. 12(b)(1);

3

Fed. R. Civ. P. 12(b)(6).  Plaintiff opposes the Motion, contesting each of Defendants'

arguments for dismissal.  See DE 19.  Defendants have filed a Reply in support of

the Motion.  See DE 34.

## II.     Discussion

### A.     Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Attacks on subject-matter jurisdiction may be either facial or factual.

See Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam).

Here, Defendants' Motion raises a factual attack because it "challenges the existence of

subject matter jurisdiction in fact, irrespective of the pleadings."  Menchaca v. Chrysler

Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).[3]  In a factual attack, a court may

consider "matters outside the pleadings."  Id.  "[T]he trial court is free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case," and

"no presumptive truthfulness attaches to plaintiff's allegations."  Lawrence, 919 F.2d at

1529 (internal quotation marks omitted).  Further, the plaintiff "has the burden of proving

by a preponderance of the evidence that the trial court does have subject matter

jurisdiction."  Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. May 1981).

Defendants assert that two of Plaintiff's claims—that Defendants terminated him

to avoid paying ERISA benefits (Count I), and that the Executive Plan is not a Top Hat

Plan (Count II)—were resolved as part of a March 2014 settlement agreement between

Plaintiff and TCI's Venezuelan subsidiary (the "Agreement").  See DE 8-4.  While not

expressly stated, Defendants apparently contend that the prior resolution of Plaintiff's

---

[3]  Decisions of the former Fifth Circuit issued before October 1, 1981, are binding
precedent in the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209
(11th Cir. 1981) (en banc).

claims renders them moot.  See Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) ("An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." (internal quotation marks omitted)).

In the Agreement, Plaintiff generally released "any and all claims arising out of or relating to [his] employment with [TCI and its related companies] or the termination of that employment."  DE 8-4 at 15.  But the Agreement specifically excepted certain claims from that release:

> [T]he parties agree that [Plaintiff] does not waive or release any claims or rights he may have outside of Venezuela, if any, under either the Executive Retirement Plan of Thermal Ceramics Latin America or the Morgan US Employees' Retirement Plan, and [Plaintiff] may pursue claims or remedies outside of Venezuela for benefits under either or both of such pension plans pursuant to the terms and conditions of the respective pension plans and/or as otherwise provided under the Employee Retirement Income Security Act of 1974, as amended and any other applicable U.S. federal or state law.

Id. at 16.  Focusing on the language that allows Plaintiff to "pursue claims or remedies . . . for benefits" under the Plans, Defendant argues that this exception does not apply to Counts I and II because they are equitable claims.  The Court disagrees.

The release exception above, read as a whole, shows that the Agreement intended to preserve "any claims or rights" Plaintiff may have under the Plans.  The exception also preserved Plaintiff's ability to enforce those claims or rights by pursuing all relief available under ERISA—including legal, equitable, or other remedies.  More, even reading the exception in the narrow way Defendants suggest, Counts I and II ultimately seek to recover Plan benefits.  Count I alleges that, by unlawfully discharging Plaintiff, Defendants deprived him of retirement benefits he would have been eligible to

receive.[4]  See DE 1 at 7-8.  And Count II seeks a finding that the Executive Plan is not a Top Hat Plan, which may allow Plaintiff to recover vested benefits that he should have been paid under that Plan.  See id. at 9-10.  Plaintiff has therefore demonstrated that Counts I and II were not released in the prior Agreement.

## B.    Motion to Dismiss for Failure to State a Claim

To withstand a Rule 12(b)(6) dismissal motion, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  At this stage in the litigation, a court must accept the facts alleged in the complaint as true and draw all reasonable inferences therefrom in the plaintiff's favor.  See Twombly, 550 U.S. at 555-56.   The complaint therefore must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  The court may also grant a motion to dismiss if, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### 1.    Count I

Defendants contend that Count I, alleging violation of ERISA § 510, fails to state a plausible claim for relief.  In relevant part, § 510 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or

---

[4]  The Court likewise rejects Defendants' contention that Count I was resolved in the Agreement because Plaintiff generally released all claims regarding his termination. Section 510 of ERISA prohibits discharging an employee to deprive him of rights under a benefit plan.  See 29 U.S.C. § 1140.  As discussed above, Plaintiff's ERISA claims were excluded from the Agreement's release provisions.

beneficiary for exercising any right to which he is entitled under the provisions of an

employee benefit plan . . . or for the purpose of interfering with the attainment of any

right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.

Here, Plaintiff claims that TCI interfered with his potential rights under the Executive

Plan by terminating his employment "to prevent him from obtaining early or normal

retirement benefits." DE 1 at 8, ¶ 32.

"The ultimate inquiry in a § 510 case is whether the employer had the specific

intent to interfere with the employee's ERISA rights." Clark v. Coats & Clark, Inc.,

990 F.2d 1217, 1222 (11th Cir. 1993). "A plaintiff is not required to prove that

interference with ERISA rights was the sole reason for the discharge but must show

more than the incidental loss of benefits as a result of a discharge." Id. at 1222-23.

An employer's unlawful motive may be established by direct or circumstantial evidence.

See id. at 1223-24 (describing standards for direct evidence and burden-shifting

analysis for circumstantial evidence).

Defendants claim that Plaintiff has not pleaded facts showing that Defendants

terminated him to avoid paying his future retirement benefits under the Executive Plan.

In particular, Defendants argue that Plaintiff has not demonstrated a "close temporal

proximity" between his termination date and his eligibility date for retirement benefits.

Defendants dispute Plaintiff's allegation that, when he was discharged, he was just

21 months away from receiving those benefits. Defendants instead contend that,

based on a proper calculation of Plaintiff's service credit, he would not have received

benefits until nearly seven years later. Further, even assuming that Plaintiff would have

been eligible for benefits in 21 months, Defendants assert that Plaintiff has pleaded no

additional facts showing that Defendants acted with an illegal motive.  The Court finds

these arguments unpersuasive.

Regarding the vesting date for Plaintiff's retirement benefits, Defendants assert

that Plaintiff's service credit under the Executive Plan did not begin to accrue until 1999,

when he was selected to participate in the Plan.  But as Plaintiff explains, nothing in the

Plan's language supports that claim.  Indeed, the Executive Plan defines "Credited

Service" as "[t]he number of full years and completed months of continuous service as

an Employee of a Participating Company."  DE 8-1 at 4; see also id. at 18 (defining

"Years of Service" as "[c]omplete years and months of service since date of hire").[5]

Aside from the timing of his discharge, Plaintiff has pleaded more than enough

facts to state a plausible claim under § 510.  Plaintiff alleges that, on multiple

occasions, TCI management expressed concerns about having to pay Executive Plan

benefits.  For example, Plaintiff contends that in a 2005 memo, TCI's President noted

the lack of funds to pay benefits to the four covered executives, and suggested that the

Plan "may not be legally binding if we work hard at justifying that."  DE 1 at 5, ¶ 17.

Plaintiff further contends that in 2006, TCI's Director of Compensation and Benefits said

---

[5]  Defendants also mention in passing that, under the Executive Plan, "early
retirement was only available with the consent of the employer."  DE 8 at 9; see DE 8-1
at 7, ¶ 4.2.  But § 510 does not require an employee to show definitively that he would
have received ERISA plan benefits absent the employer's unlawful conduct.  Rather,
the statute prohibits "interfering with the attainment of any right to which such
participant **may** become entitled under the plan."  29 U.S.C. § 1140 (emphasis added).
Thus, the possibility that TCI would not have consented to Plaintiff's early retirement
does not foreclose his § 510 claim.  See Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 893
(3d Cir. 1986) ("The statutory language forbids conduct taken for 'the purpose of
interfering with the attainment of any right to which such participant may become
entitled,' regardless of whether the interference is successful and regardless of whether
the participant would actually have received the benefits absent the interference.")

that something had to be done about the Executive Plan before the "first executive reaches age 65 and claims his non-existent pension!" Id. at 5, ¶ 18. In addition, the year before TCI discharged Plaintiff—without cause and despite his strong job performance—his supervisor "asked him to provide a detailed analysis of the value of his early and normal retirement benefits under the [Executive] Plan, and to provide an explanation of his understanding regarding the Company's obligation with regard to such benefits." Id. at 6, ¶ 20. Whether viewed as direct or circumstantial evidence, these and other facts pleaded in the Complaint plausibly allege that TCI "had the specific intent to interfere with [Plaintiff's] ERISA rights." Clark, 990 F.2d at 1222.

### 2.   Counts II and III

ERISA exempts certain employee benefit plans—known as Top Hat Plans—from many of the law's substantive provisions, including those concerning employee vesting and plan funding. See 29 U.S.C. §§ 1051(a)(2), 1081(a)(3); see also id. § 1101(a)(1) (providing exemption from fiduciary-duty provisions). A Top Hat Plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." Id. In Counts II and III, Plaintiff seeks clarification that the Executive Plan is **not** a Top Hat Plan and, based on that finding, recovery of vested retirement benefits under the Plan.[6] Defendants move to dismiss these claims, arguing that the Executive Plan is a Top Hat Plan as a matter of law. The parties' dispute focuses on whether the Executive Plan is "unfunded" within the meaning of ERISA.

---

[6] In the event the Court determines that the Executive Plan does qualify as a Top Hat Plan, Plaintiff requests other benefits and remedies in Count III.

While the Eleventh Circuit has not addressed the term "unfunded" in this context, the Second Circuit has held that a benefit plan is **not** unfunded if "'the beneficiary [can] establish, through the plan documents, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation[.]'" Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 287 (2d Cir. 2000) (quoting Miller v. Heller, 915 F. Supp. 651, 660 (S.D.N.Y. 1996)).  Similarly, the Third Circuit has explained that

> the keys to the determination of whether a plan is "funded" or "unfunded" under ERISA are (1) whether beneficiaries of the plan can look to a res separate from the general assets of the corporation to satisfy their claims; (2) whether beneficiaries of the plan have a legal right greater than that of general, unsecured creditors to the assets of the corporation or to some specific subset of corporate assets.

Accardi v. IT Litig. Tr. (In re IT Grp., Inc.), 448 F.3d 661, 669 (3d Cir. 2006).

Here, the Executive Plan provides that a Trustee "shall establish a trust Fund in connection with the Plan for the purpose of receiving the contributions and paying the benefits provided by the Plan."  DE 8-1 at 11, ¶ 8.1.  The Plan envisions that the "contributions" to the fund will be made by the companies "whose employees may be eligible for participation in the Plan."  Id. at 11, ¶ 8.2; id. at 4, ¶ 2.13.  TCI confirmed this understanding in a letter to Plaintiff:  "This [Executive] Plan is completely funded by the Company.  You are not required to contribute to the Plan."  Id. at 20.  Further, the Executive Plan describes its "Provision of Benefits" as follows:

> All benefits under the Plan will be paid out of the Fund and any Member or other person having any claim under the Plan must look solely to the assets of the Fund for such benefits.  No person shall have any right to, or interest in,

> any part of the assets of the Fund except as and to the
> extent provided from time to time under the Plan and the
> Trust Agreement.  Under no circumstances shall any liability
> attach to any Participating Company, or any officer,
> shareholder, director or employee of any Participating
> Company for payment of any benefits or claims hereunder.

Id. at 11, ¶ 8.3.

In arguing that the Executive Plan is "unfunded," Defendants point to the undisputed fact that TCI and its related companies never actually contributed any money to the Plan's purported trust fund.  The Court finds this contention unavailing.

As established, the Executive Plan committed to provide retirement and other benefits for certain employees, relying on the contributions of TCI and related firms.  More specifically, the Plan promised to create a trust fund strictly separate from the general assets of the participating companies.  See Demery, 216 F.3d at 287; In re IT Grp., Inc., 448 F.3d at 669.  And, reading the Executive Plan's language in the light most favorable to Plaintiff, the Plan affords its participants greater rights to the trust res than unsecured creditors of the contributing firms:  "No person shall have any right to, or interest in, any part of the assets of the Fund except as and to the extent provided from time to time under the Plan and the Trust Agreement."  DE 8-1 at 11, ¶ 8.3; see Demery, 216 F.3d at 287; In re IT Grp., Inc., 448 F.3d at 669.  Because these facts show that the Executive Plan was not "unfunded," Plaintiff has plausibly alleged that the Executive Plan is not a Top Hat Plan and that he is entitled to recover vested retirement benefits owed to him under the Plan.

### 3.    Count IV

In Count IV of the Complaint, Plaintiff claims that TCI failed to credit the full length of his employment with the company in determining his pension benefits under

the MUSE Plan.  Defendants' Motion asserts that, "[c]ontrary to ERISA pleading requirements, the Plaintiff does not allege (1) how the purported Service Credit was calculated, (2) how the purported Service Credit is defined for purposes of calculating a MUSE Plan benefit, or (3) the specific terms of the MUSE Plan that he believes were inaccurately interpreted."  DE 8 at 13.  Plaintiff notes, however, that the MUSE Plan expressly defines "Benefit Service," which "describes an employee's accrual of credit under the Plan based on his period of service to the Company."  DE 19 at 19; see DE 8-2 at 11, § 1.07.  "The substantive point at issue," Plaintiff observes, "is whether Defendants[] properly credited [Plaintiff's] years of service based on the applicable Plan terms."  DE 19 at 19.

Although Plaintiff could have pleaded Count IV in better detail, Defendant has sufficient notice of the basis for this straightforward claim.  And Plaintiff's allegations are enough to state a plausible claim for unpaid pension benefits.  See id. § 1132(a)(1)(B).

### 4.     Count V

Defendant also moves to dismiss Count V of the Complaint, in which Plaintiff seeks to recover his reasonable attorney's fees.  Defendant maintains that "while attorney's fees are potentially available as a remedy to a prevailing Plaintiff in an ERISA claim, they do not constitute an independent cause of action."  DE 8 at 14.

While Defendants' point is valid with respect to the form of Plaintiff's pleading, Defendants correctly recognize that ERISA permits an award of attorney's fees in a case (like this one) brought by a plan participant or beneficiary.  See 29 U.S.C. § 1132(g)(1).  Therefore, rather than dismissing Count V, the Court will construe it as a request for attorney's fees in addition to the other relief sought in the Complaint.

III.     **Conclusion**

For the reasons discussed herein, it is

**ORDERED AND ADJUDGED** as follows:

1.      Defendants' Motion to Dismiss the Complaint [DE 8] is hereby **DENIED**; and

2.      By **April 19, 2016,** Defendants shall answer Plaintiff's Complaint [DE 1].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 5th day of April, 2016.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF